and without any attempt to contradict that this group had functioned the same way from 1995 until literally the present time, but certainly until after it received its 501c3 blessing in 2003. In 2003 the group, which the court called a core group, decided to file for a 501c3 exemption. It was granted. The purposes that were described in that application and thus approved by the IRS when it granted it were research in alternate medicine epidemiology. We would have a very different case if IRS had assessed back taxes and penalties for the period after the organizational papers are filed, but that's not this case. It's about taxes before any form of organizational papers were filed, before there was any effort to set up an organization at all. So what's wrong with the tax court's analysis here? You're quite right. If I could have time traveled for my clients back 10 years, it would be a different case. I can't, but the IRS code gives me a way of doing something that makes relevant the continuity of activity before. It is referred to by the court itself below in its opinion at addendum 16 where the court frames our argument this way and it answers your question, I believe. The court says, petitioner argues that his then activities as a social welfare organization were tax exempt under section 501c4 because they qualified pursuant to 501c3. If they qualified before the filing, then they do not have to await the filing to be tax exempt. The law is clear that for 501c4 status, your honor, you do not have to file. You just have to meet the test. And he found you didn't meet the test for any number of reasons, none of which appear to be clear error. Well, I believe, your honor, that the one legal error. Okay, you think this turns on your legal proposition that as long as the whatever was done earlier meets the qualifications, that there are no other requirements for an organization? Is that what you're arguing? Yeah, well, your honor, there's some other requirements, but the fundamental point that you made at the beginning that we would have a much different case if the application had been approved in 1995, you're quite right, it would have been simple. The only issue then would have been were these sales and earnings, were they program income because we would have had a charity that was undebatable. The debate about this charity is whether what happened before 2003 when it became unreservedly approved by the IRS, that approval never challenged and that they admitted in this case in their answer, if what happened before is the equivalent because the testimony said that it was. And I believe that's a mixed question of law and fact. But it's equivalent along what dimension? And I thought it was whether it's equivalent along the dimension of being an organization. Yes, your honor. And patently, there's a difference when there are organizational papers filed at time two that weren't filed at time one. So the district court's finding that the claim that it's the same can't be taken fully seriously. There's got to be a conclusion that even though no papers were filed, it operated like an organization. Yes. Okay. But the district court found it did not, right? I do not believe that the district court found that it did not operate as an organization. What the district court said was it was not incorporated under Massachusetts law. Right. That is not exclusively the way one becomes an organization. Okay. Only if the district court had held that was its sole basis for concluding it was not an organization. Well, that and the fact that it didn't file certain tax forms that it should have filed as a reporter as a 501c. I thought there was also just the testimony that it referred to about basically the inconclusive nature of whether this was operating as an organized group or whether it was one person with people that were working with him. Your honor, the testimony is absolutely uncontroverted. It was acting exactly the same way. Well, I understand that's a conclusion. That might mean that we would say the district court committed clear error in finding otherwise. But I agree the district court to have found otherwise on that point. Well, your honor, I don't believe the district court specifically found that there was a radical change in activity. I'm not saying there was a radical change in activity. What I'm saying is there was a filing of organizational papers at time two. 2003. Right. There was no filing of organizational activity prior to that. No. Okay. So in order to be an organization, you can't rely on organizational papers. You cannot. Okay. You have to rely on the way the group was operating. Yes. The district court found the way that group was operating was not as an organization. Correct? I don't believe the only basis that I saw in your opinion, your honor, for that was that they had not filed papers. Not what they were doing. There is the issue that only he had access to a dozen bank accounts. One has to wonder why there were a dozen with mixed up social security numbers, making it more difficult for the IRS to track the actual activity. Well. The members of the group did not have access to the income generated by the group. He treated this as a personal fiefdom, mind you, for perhaps admirable purposes. If he paid taxes, he wouldn't reach his goal of $10 million. But it wasn't simply not setting up certain documents. Your honor, the tax court's decision on whether or not this was a civic lead, and the court did the analysis as a civic lead rather than a continuity of behavior, but it did not rely at all on the mixed up social security numbers. You're correct. The court did note that he was the only person that had access to the bank accounts. However, your honor, he never spent a dime of that money. It never endured to the benefit of anybody. It sat in that account for a legitimate purpose under the case we cited, the Presbyterian case, in which they were saving money in a charity that they were earning by selling books so that they could get a bigger printing press someday if they got enough money. This is, in essence, what he was doing. There is no law that says that you have to have two signatures on a charitable account. The court looks at the substance. And by the way, the IRS is always looking at the substance when it suits them, but for when it doesn't. The substance here is that they were doing the same thing before as when they were approved. If you look at the description of what they were doing when they were approved, your honor. Excuse me. Yes, sir. There's a value in a case involving a client. There is. Yes, your honor. And what is the impact of that case and the findings of that case on our decision here? I'm glad you raised that because I know the government relies on that a lot. That case was a criminal case for four of the nine cashiers involved in this case. They found him guilty without specifying a precise amount of taxes owed. That could have been the basis for an assertion of collateral estoppel. This case was not decided on collateral estoppel, at least for those four years. The reason is that that case did not involve any defense of charitable organizations. It did not mention charitable organizations. The appeal in that case, which this court decided, not this panel, but this court, was based upon the fact that they did not even consider below. No defense. And by the way, Mr. George didn't testify. There was no defense, no testimony like there was in this case, about whether or not this was a charitable organization, it was a charitable function. Isn't the first case have a finding that his work did not benefit the general social welfare, which is an issue now being raised? That's what the finding was. And how does that impact this case? I submit that it does not for two reasons. First, there was no evidence in that trial record, none on that issue. But more importantly, we were not asserting a defense. We were not asserting that there was a charitable basis for not declaring income on the basis of being a civic league, serving the public. We were basing it on the continuity of behavior. Doesn't that case also hold that your client did not operate an organization because he failed to engage in any traditional business behavior? Isn't that an issue here? No, it is not. The issue here is whether or not, under the rule which says, that the judge notes below, that if you are acting in a way that would qualify you under 501c3 based on your activity, then it is tax exempt whether or not you have actually filed. And when they filed in 2003, our argument is they were doing nothing different by way of activity. They had an organization. It wasn't well done. It was filed articles of incorporation. If they come to me or 95% of the lawyers on the planet, they would have been told file your organization and clear this up. Thank you. Can I ask you about the tax court's finding? This just goes to the point about whether the tax court was making a finding about whether there was an organization before the papers were filed, for reasons independent of the fact that no papers were filed. Yes, sir. The tax court says, I'm quoting, before 2003 there was no separation between petitioners and his activities. George, quote, was the sole researcher, analyst, producer, service provider, and scientist, and, quote, the only member of his group with control over the alleged organization's fund held in his personal bank accounts. The tax court then put a new effort to avoid taxation. George was belatedly trying to make an organization appear where none had existed. So why wouldn't those findings, that he was the sole researcher, analyst, producer, service provider, and scientist, and the only member of his group with control over the alleged organization's fund held in his personal bank account, be an independent basis for concluding that the activities of the organization were not of an organization? Because, well, for that part of it, I agree, and that's why we put it as one of our issues. It was clear error. So that we have to fight clear error. And I will tell you, the testimony, my time is up. I guess I've got 14 seconds. I'm using my rebuttal time. If I may just answer this question. The testimony of everybody who talked said that from 1995 through the present time, all people were doing different things. They were holding salons out in Los Angeles. He never attended. He never traveled. Two a month. Two a month for all those years, where they would talk about health, where they would meditate, where they would do what they did, where they would talk about brain technologies that were better and health technologies that were better. They would urge people to come to these longer meetings in Rockport, where they'd have different people teaching cooking, different people teaching yoga, different people teaching how to pray and breathe and cook, cook naturally. And then George would come in for his part of it. He was the only scientist. There's no doubt. He was the one who did the supplements. He was the one who came up with the magic. And it was so important that he would get their feedback so he could approve it. That goes to our point that it was substantially related to the business income. All of that, Your Honor, went completely uncontested below. And it was an organization, although no one would ever get much credit if they didn't clean it up and file the paperwork. There's no doubt. But the question is, could it be said without wanting to file a clear error, based upon the testimony in this case, not the last case, that this was a genuine organization that didn't do anything differently? And if you were to look, Your Honor, at the statement of the reasons why it sought and got obtained tax-exempt status in 2003, that description is exactly echoing what they were doing before. Without doubt, it took more than one person. It took all those people doing all those different things. One last thing. There's no change. I'm afraid your time is up. We'll take you on your brief. Very well. Mr. Sheehan? May it please the Court, I'm Anthony Sheehan for the Commissioner of Internal Revenue. I'd like to start off with an administrative matter. Unfortunately, yesterday, in preparing for the argument, I realized that there was a glitch in the transcripts. The government used PDF transcripts provided by the court reporter. Mr. Markham used the hard copy transcripts and the pagination is off. Mr. Markham did include every page we requested in his transcript appendix properly, but as it turns out, that's off the citations in our brief. When I get back to my office, I will sort it out and file a motion to get it fixed. Moving on to the merits, as the Court, I think, understands, the tax court here found that there was no organization during the years at issue. In 2003, after Mr. George was indicted for tax evasion for some of these same years, there was a sea change. Finally, there were organizational papers filed. Before that, there was no organization. It was not just a matter of filing papers. I know that Mr. George likes to talk about how the commissioners hung up on corporations. If you look at page 30 of our brief, there was no community trust fund, foundation, trust association. There was no separate legal or fiscal entity at all in this case. The bank accounts, which were just referred to as charitable bank accounts, these were not the bank accounts of an organization. They were Mr. George's personal bank accounts under some variation of his social security numbers over which he had complete control and to which he had complete access. Were any of these funds used for personal reasons? No, they were not, but it doesn't matter. Does it make a difference? It does make a difference because, as the Supreme Court said in Corliss v. Bowers, which we quote in our brief, income that is subject to a man's unfettered command and that he is free to enjoy at his own option may be taxed to him as his income, whether he sees fit to enjoy it or not. That's also accurate in Griffiths v. Halvard, which is cited in our brief. If Mr. George had decided to take this money and spend it on himself, there was absolutely no legal, fiscal, or financial reason why he couldn't. There was no entity or organization which could say, go into court and say, you can't do that, it's our money. Does the IRS take intent into account for reaching these conclusions? Intent? Intent. No, because taxation is a practical matter. As this court subpoenaed, I believe, in Barrett v. Commissioner from 1950. It's also cited in our brief. It's a practical matter. This money was paid to Mr. George in cash or in checks in his name. He put it into bank accounts under his complete and unfettered control. That's the sole basis for filing there was no organization? There are other bases also. So I thought that the idea was, even though the money was in his own personal bank account, it's possible a person could still qualify as an organization without filing corporation papers. Is that true? I don't think so, Your Honor. It's not true? Not just corporation papers, but there is no separate entity. I'm just trying to say what the IRS's position is that you're asking us to uphold. So I thought the IRS was not saying that the fact that the money goes into an individual's bank account means it can't be an organization. I think it does mean, well, if there's a limit to whether that's determined or not. In this case, Your Honor, there are multiple, multiple indicia that there's no organization. Certainly, though, besides the failure to file the papers and the fact that the money went to the individual account, which I agree is an indicia that it's not an organization, what else? Also, if he was operating a social welfare organization, he had to file tax returns. They were non-filed. If he was operating an organization that was charitable, he had to file the documents with the state of Massachusetts. They were non-filed. If you look at the interaction of this group, he was simply a guru with a bunch of followers. These people were not gathering together as an organization over money. The people who attended the retreats paid money to attend or paid in kind by working. When he dealt with other organizations like BioWay, like Naturally Scientific, they treated him as a vendor and paid for product. Even his biggest supporter, Angel Evans, she had a company called, I believe it was Brain Solutions. When she wanted product to sell, and now that we mention these Los Angeles salons, those weren't to spread the word about Mr. George. Those were for Angel Evans to sell her products, which were based on buying product from Mr. George. When she was buying from him, she was buying from him as a vendor, as a sole proprietor, and paying him for the product he provided. Paying money directly to him, personally to him, which he deposited. He can't then, having received the money himself in his own name, try to assign it to somebody else to avoid taxation on it, particularly to an entity that did not exist in any way, shape, form, or manner. Counsel, I understand you to argue in response to Judge Toreo's question that intentionality to do a good thing doesn't excuse him from paying taxes. But we also have the penalty provisions of the Code, and here a penalty was imposed. And there is some intentionality involved in the penalty proceedings. I've not seen any separate appeal or argument that the penalties were improperly imposed. Is that correct? That is correct. There is no argument in the brief or reply brief about the penalties. They rise and fall with the deficiency. OK. Thank you. So again, there was no organization. We would also argue that, for reasons stated in our brief, that this organization was not operated for social welfare and that these profits was a very profitable entity, very profitable activity, I should say, activity for Mr. George in order to his benefit and tellingly all the evidence that trying to hide it by switching social security numbers and not filing returns. And if there are no further questions, I'll rest on my brief and ask the Court to affirm. Thank you. Thank you. I think I have some time left with my rebuttal. Oh, yes, you're right. Oh, good. Keep forgetting. Good. Just a couple of things. The testimony was not simply that George alone controlled this. These people did all the organizational things that I cited in my brief. It was an organization, albeit not the ones that a lawyer would dream if they had their perfect time to do the drafting, and I submit that issue. Your Honors asked my brother whether there were any other indicia of organization or no organization, and he said, yes, Dan George sold product. That has nothing to do with the organizational structure. The question of whether those sales are tax-exempt or taxable depends upon whether or not the earnings from those sales substantially advanced his charitable purpose. And the uncontradicted testimony was that he gave those supplements out, he waited for people to have reactions, the people had the reactions, they told him what they were, and he therefore re-engineered, with his chemistry wizard, those supplements. Believe it or not, a lot of people did. As Angel Evans said, she brought in between 500 to 1,000 people there over her time, and many others brought people as part of the organization. The question is whether or not, if this is in fact an organization, the technical details are required before it meets a test in the code that doesn't stand on technical requirements, it stands rather on the purpose. And his purpose was to do something which was certainly within the bounds of the definition of a 501c3 organization, and therefore we respectfully submit that it was error to find that there was no organization before, in light of all the testimony, unless you have to do a certain filing of a certain corporate document or something like that. If that's the case, obviously we didn't do it, they didn't do it. But I respectfully submit that is not the law. Thank you very much. Thank you.